Steven R. Reid, USB #16220
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2000 South Colorado Boulevard
Tower Three, Suite 900
Denver, CO 80222
Telephone: 303.764.6800
Facsimile: 303.831.9246
steve.reid@ogletree.com

*Attorneys for Plaintiff Clean Harbors Environmental Services, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> GRAYMAR ENVIRONMENTAL SERVICES, INC., WILLIAM CHRISTY, and JACOB WILCOX, <br><br> Defendants. | **AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** <br><br> **JURY DEMANDED** <br><br> Case No. 2:22-cv-00694-JCB |

Plaintiff Clean Harbors Environmental Services, Inc. ("Clean Harbors" or the "Company"), through its undersigned counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby asserts the following claims for relief against Defendants GrayMar Environmental Services, Inc. ("GrayMar"), William Christy ("Christy") and Jacob Wilcox ("Wilcox") (collectively referred to as "Defendants"):

## I.   NATURE OF ACTION

1.      This is a case about the breach of a confidentiality and restrictive covenant agreement committed by Clean Harbors' former employee, William Christy, who is competing

with Clean Harbors, as well as soliciting Clean Harbors' customers and employees, in violation of his confidentiality and restrictive covenant agreement (the "Noncompete Agreement"). This case is also about Clean Harbors' direct competitor, GrayMar, and its interference with the Noncompete Agreement between Christy and Clean Harbors and the misappropriation of Clean Harbors' trade secrets by Christy, former employee of Clean Harbors, Jacob Wilcox, and GrayMar. GrayMar's conduct with respect to Mr. Christy and Mr. Wilcox is just the latest in a long pattern of GrayMar engaging in unfair and illegal competition in other jurisdictions.

2.      Clean Harbors seeks permanent injunctive relief, compensatory and exemplary damages, and other relief against Defendants based on, among other things, Christy's breaches of his Noncompete Agreement, GrayMar's tortious interference with the Noncompete Agreement, Defendants' tortious interference with Clean Harbors' relationships with its customers, and Defendants' misappropriation of Clean Harbors' confidential and proprietary information and trade secrets.

## II.      <u>THE PARTIES</u>

3.      Clean Harbors is a Massachusetts corporation with its principal place of business at 42 Longwater Drive, Norwell, Massachusetts 02061. Clean Harbors is licensed and authorized to do business, and does business, in Utah. Clean Harbors maintains multiple places of business within Utah, including, as relevant here, at 215 North 470 East, Tooele, Utah 84074.

4.      Defendant GrayMar is a Washington corporation with its principal office located at 100 Springdale Road, Suite A3, Cherry Hill, New Jersey 08003.  Upon information and belief, Defendant GrayMar operates an office located at 1830 West Highway 112, Tooele, Utah 84074.

5.     Defendant William Christy is an individual who resides at 1475 East Country Lane, Erda, Utah 84074.

6.     Defendant Jacob Wilcox is an individual who resides at 302 Interlochen Lane, Stansbury Park, Utah 84074.

### III.     JURISDICTION AND VENUE

7.     This action seeks to enforce Christy's contractual and legal obligations to Clean Harbors and to remedy Defendants' violations of applicable law.

8.     This Court has personal jurisdiction over GrayMar because GrayMar (a) regularly conducts business within the borders of the State of Utah; and (b) committed wrongful acts and omissions as described herein, with resulting injury, damages, loss, or other consequences in, among other locations, the State of Utah.

9.     This Court has personal jurisdiction over Christy because Christy irrevocably submitted himself to this Court's jurisdiction pursuant to Section 13 of the Noncompete Agreement with Clean Harbors, executed on August 7, 2018. This Court also has personal jurisdiction over Christy because he (a) is domiciled in the State of Utah; and (b) committed wrongful acts and omissions as described herein, with resulting injury, damages, loss, or other consequences in, among other locations, the State of Utah.

10.     This Court has personal jurisdiction over Wilcox because he (a) is domiciled in the State of Utah; and (b) committed wrongful acts and omissions as described herein, with resulting injury, damages, loss, or other consequences in, among other locations, the State of Utah.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because one of the causes of action arises under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1367.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(b), as Defendants are located in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred here. Additionally, Section 13 of the Noncompete Agreement between Christy and Clean Harbors identifies Utah as the proper venue for any action arising out of the agreement.

## IV.     FACTUAL BACKGROUND AND COMMON ALLEGATIONS

### Clean Harbors' Business and Confidential Information

13.     Clean Harbors provides environmental, energy, and industrial services to customers throughout North America in chemical, energy, manufacturing, and other markets.

14.     Specifically, Clean Harbors' Technical and Field Services divisions provides a broad range of hazardous material management and disposal services, including but not limited to the collection, packaging, transportation, recycling, treatment, and disposal of hazardous and non-hazardous waste; emergency response, industrial and specialty services including but not limited to tank cleaning, high-pressure and chemical cleaning, catalyst handling, among other things; and industrial lodging services to refineries, chemical plants, pulp and paper mills, and other industrial facilities.

15.     While Clean Harbors provides a wide array of services, since its inception in 1980, Clean Harbors has become a recognized leader in hazardous waste disposal and environmental emergency response services.

16.     Clean Harbors has operations located in Tooele, Utah and Salt Lake City, Utah where it primarily provides emergency response, field cleaning, field decontamination, confined space entry, transportation, waste disposal, and recycling services.

17.     The universe of prospective customers for Clean Harbors is large, potentially consisting of every institute requiring hazardous and non-hazardous material management and related services.

18.     From this vast universe of potential customers, however, Clean Harbors has devoted substantial time and expense to identifying the customers receptive to Clean Harbors' services, identifying the key decision makers within those various customers, cultivating Clean Harbors' customer relationships, learning the specialized needs and preferences of Clean Harbors' customers, and working out customer-specific pricing and service arrangements.

19.     Clean Harbors has also spent substantial time and money to develop confidential information about vendors or suppliers, including payment and pricing information, the implementation of customer specific projects, the composition or description of future services that will or may be offered by Clean Harbors, marketing strategies, financial and sales information, and technical expertise and know-how developed by Clean Harbors. The information described in Paragraphs 18 and 19, while not an exhaustive list, is referred to herein as Clean Harbors' "Confidential Information".

20.     Clean Harbors' Confidential Information is not generally known, accessible, or ascertainable to third parties outside of Clean Harbors.

21.     Clean Harbors has kept private and maintained the confidentiality of its Confidential Information by exercising efforts to protect it, including, in part: requiring employees

to execute confidentiality agreements, enforcing its employment policies that mandate the nondisclosure of confidential and sensitive information, and maintaining password protections, including requiring employees to connect to the Company's VPN to securely access any of the Company's systems when working remotely.

**<u>Christy's Employment and Non-Competition Agreement with Clean Harbors</u>**

22.     Christy was hired by Clean Harbors as a Field Service Specialist in March 28, 2011 and worked for Clean Harbors until his resignation, effective February 4, 2022. At the time of his resignation, he worked as a Field Service Specialist at Clean Harbors' location in Tooele, Utah.

23.     In order for Christy to carry out his duties and responsibilities for Clean Harbors, Clean Harbors entrusted him with its Confidential Information. He also had significant and consistent customer interaction. Specifically, his job duties required him to ensure all jobs performed by the local branch were properly scoped, quoted, and executed safely and efficiently to meet clients' expectations. He was responsible for business development and maintenance of customers' relationships. He was also required to interface with customers to keep them updated as to project status. In addition, Christy participated in joint sales calls with local account managers.

24.     On August 7, 2018, for valuable consideration, Christy entered into the Noncompete Agreement with Clean Harbors (a true and correct copy of which is attached as Exhibit 1). The Noncompete Agreement set forth Christy's obligations to Clean Harbors, which began upon execution of the Noncompete Agreement and are continuing in nature.

25.     Christy signed the Noncompete Agreement and agreed to abide by its terms.

26.     The Noncompete Agreement is narrowly tailored to serve Clean Harbors' legitimate business interests.

27.     Clean Harbors possesses the following valuable business assets and legitimate business interests justifying the restrictive covenants in Christy's Noncompete Agreement: valuable Confidential Information; its substantial relationships with specific prospective and existing customers; customer goodwill; the extraordinary and specialized training it provides to its employees; and, among other things, the overall investment it makes into these employees.

28.     For purposes of the Noncompete Agreement, "Business of Clean Harbors" is defined, in part, as:

> Providing environmental, energy, or industrial services to Customers throughout North America in chemical, energy, manufacturing, and other markets. These services are provided through the Company's business units, which currently include Technical Services, Industrial Services and Field Services, Safety-Kleen, Oil and Gas Field Services, and Kleen Performance Products.

29.     "Competing Business" for purposes of the Noncompete Agreement means:

> Any individual (including Employee), corporation, limited liability company, partnership, joint venture, association, or other entity, regardless of form, that is directly engaged in whole or in relevant part in any business or enterprise that is the same as or substantially the same as, the Business of Clean Harbors, or that is taking material steps to engage in such business.

30.     Section 3 of the Noncompete Agreement contains specific nondisclosure obligations, stating:

> During the term of Employee's employment and following the termination of Employee's employment for any reason and with or without cause, Employee will not, except as authorized and required to perform Employee's duties for Clean Harbors, directly or indirectly: use, disclose, reproduce, distribute, or otherwise disseminate Clean Harbors' Confidential Information or Trade Secrets, or take any action causing, or fail to take any

action necessary in order to prevent, any such information to lose its character or cease to qualify as Confidential Information or a Trade Secret.

31. Section 5 of the Noncompete Agreement prohibits Christy from soliciting customers, either directly or through others, stating:

> Employee agrees that during Employee's employment and for one (1) year following the termination of Employee's employment for any reason and with or without case, Employee will not, either on behalf of Employee or for any Competing Business, directly or Indirectly solicit, divert, or appropriate, or attempt to solicit, divert, or appropriate any Customer with whom or which Employee had Material Business Contact in the two (2) year period preceding the termination of employment, for the purposes of providing services that are the same or substantially similar to those provided in the Business of Clean Harbors.

32. Section 6 of the Noncompete Agreement prohibits Christy from soliciting Clean Harbors' employees, either directly or through others, stating:

> Employee agrees that during Employee's employment with Clean Harbors and for one (1) year following the termination of Employee's employment for any reason and with or without cause, Employee will not directly or indirectly solicit, recruit, hire, employ, retain, or encourage current employees of Clean Harbors or employees who have terminated their employment with Clean Harbors within one (1) year of the solicitation, recruitment, hiring, employment, retention, or encouragement to work or provide services to any Competing Business.

33. Section 7 of the Noncompete Agreement prohibits Christy from rendering services or engaging in any business activity with a Competing Business for one year following Christy's separation from Clean Harbors, specifically stating:

> Employee agrees that during Employee's employment and for a period of one (1) year following the termination of Employee's employment for any reason and with or without cause, Employee will not directly or indirectly, own, manage, operate, join, control, be employed by or with, or participate in any manner with a Competing Business anywhere in the geographic territory in which Employee worked, represented Clean Harbors, or had Material Business Contact with Clean Harbors' Customers, where doing so will require Employee to provide the same or substantially similar services

to any such Competing Business as those that Employee provided to Clean Harbors, and Employee agrees that this restricted territory should be determined and defined at the time of termination.

**Christy's Breach of the Noncompete Agreement**

34.     On February 4, 2022, Christy resigned from Clean Harbors. Around this time, Clean Harbors reminded him of his obligations under the Noncompete Agreement.

35.     Immediately prior to his resignation, however, on January 25, 2022, Christy connected an external drive to his Clean Harbors issued computer and copied multiple Clean Harbors files to the drive. Christy also deleted massive amounts of documents from his Clean Harbors issued computer in the final week of his employment with Clean Harbors.

36.     Despite his obligations under the Noncompete Agreement, Christy resigned from Clean Harbors to begin working for direct competitor GrayMar as an Operations Manager at GrayMar's location in Tooele, Utah in February 2022.

37.     Additionally, in conjunction with his resignation from Clean Harbors, and in violation of the Noncompete Agreement, Christy solicited at least two other Clean Harbors employees, including Andrew Lawrence, and Clayton Webb, to leave their employment with Clean Harbors and join GrayMar.

38.     GrayMar, like Clean Harbors, is an environmental services company, providing hazardous and non-hazardous waste management services, environmental emergency response services, and confined space entry.

39.     Accordingly, GrayMar is a direct competitor of Clean Harbors and is a Competing Business pursuant to the Noncompete Agreement between Clean Harbors and Christy.

40. On information and belief, GrayMar had knowledge of the Noncompete Agreement entered into by Christy and Clean Harbors when it first hired Christy.

41. Clean Harbors sent Christy a cease and desist letter on February 14, 2022, along with a copy of the Noncompete Agreement, reminding Christy of his obligations under the Noncompete Agreement and his violations of the same. (*See* letter attached hereto as Exhibit 2.)

42. Clean Harbors, through its counsel, sent both Christy and GrayMar a cease and desist letter on March 2, 2022, again reminding Christy of his continuing obligations under the Noncompete Agreement and his violation of the same and putting GrayMar on notice of the breach. (*See* letters attached hereto as Exhibits 3 and 4.) Yet, Christy elected to continue to harm Clean Harbors and violate the Noncompete Agreement through his continued work for GrayMar and GrayMar continued to interfere with the Noncompete Agreement by continuing to employ Christy, who previously stole Clean Harbors' Confidential Information.

43. Having never received a response to its prior letters, Clean Harbors, through counsel, sent Christy and GrayMar each yet another cease and desist letter on July 5, 2022. (*See* letters attached hereto as Exhibits 5 and 6.)

**Wilcox's Misappropriation of Clean Harbors' Confidential Information**

44. Wilcox was hired by Clean Harbors as a Branch Manager in March 9, 2011 and worked for Clean Harbors until his resignation, effective February 4, 2022. At the time of his resignation, he worked as a Branch Manager at Clean Harbors' location in Tooele, Utah.

45. In order for Wilcox to carry out his duties and responsibilities for Clean Harbors, Clean Harbors entrusted him with its Confidential Information. As Branch Manager, Wilcox had access to all of the Toole branch's strategies and information, including key information about

customers and customer relationships. He was responsible for customer service and customer relationships to promote growth. He also was required to develop and manage the local budget and business plan, including client lists and pipeline information. He oversaw all customer interactions and was deeply engaged with local client relationships and client preferences.

46.     Just like Christy, Wilcox resigned from Clean Harbors to work for Clean Harbors' direct competitor, GrayMar. Wilcox was hired by GrayMar as a Branch Manager at GrayMar's location in Tooele, Utah.

47.     During the final days of Wilcox's employment with Clean Harbors, he connected multiple external devices to his Clean Harbors issued computer and transferred numerous files containing Clean Harbors' Confidential Information.

48.     One of the files Wilcox transferred is a file containing a list of Clean Harbors' customers in the relevant market from 2018 to 2021, and all customer sales in 2021, to an external drive two days prior to his final day working for Clean Harbors. Wilcox had no legitimate Clean Harbors business purpose to transfer this file, and the other transferred files, two days prior to his final day working for Clean Harbors.

49.     Wilcox also utilized a Google Drive and Bluetooth file transfer multiple times during his last few days and weeks of his employment with Clean Harbors, and uploaded multiple Clean Harbors documents.

50.     Prior to Wilcox's final day with Clean Harbors, he also started performing work for GrayMar and changed his Microsoft Outlook name to "Jacob Wilcox – GrayMar Environmental Services."

51.     Clean Harbors, through its counsel, sent both Wilcox and GrayMar a cease and desist letter on March 2, 2022, again reminding Wilcox of his continuing obligations to Clean Harbors. (*See* letter attached hereto as Exhibit 7; *see also* Exhibit 4.)

52.     Having never received a response to its prior letters, Clean Harbors, through counsel, sent Wilcox and GrayMar another cease and desist letter on July 5, 2022. (*See* letter attached hereto as Exhibit 8; *see also* Exhibit 6.)

**<u>Defendants' Wrongful Conduct and its Impact on Clean Harbors</u>**

53.     Defendants are using Clean Harbors' Confidential Information unlawfully obtained by Christy and Wilcox to target Clean Harbors' current and prospective customers, undercut its prices, solicit Clean Harbors' employees to leave their employment at Clean Harbors and join GrayMar, and grievously harm Clean Harbors' business.

54.     Defendants are using Christy and Wilcox's knowledge of and relationships with Clean Harbors' employees, customers, and processes to directly compete with Clean Harbors.

55.     Defendants' actions give GrayMar an unfair business advantage in the environmental services and waste management industry at Clean Harbors' expense by giving GrayMar access to Clean Harbors' Confidential Information without expending any time or resources.

56.     Specifically, as a direct result of Defendants' actions, Clean Harbors has lost at least seven customers to GrayMar since February 4, 2022, resulting in over one million dollars in lost revenue.

57.     Defendant Christy has also solicited Clean Harbors' largest customer in Utah, Thatcher.

58.     Additionally, to date, GrayMar—with the help of Christy and Wilcox—has solicited at least two employees from Clean Harbors to work for GrayMar, resulting in significant loss to Clean Harbors in the amount of approximately $250,000 per employee due to lost revenue and monies spent on recruiting, onboarding, and training these employees.

### FIRST CAUSE OF ACTION
### Breach of Contract
(Against Christy)

59.     Clean Harbors hereby incorporates by reference the allegations contained in Paragraphs 1 through 58 as if fully set forth herein.

60.     As part of the Noncompete Agreement executed by Christy (Ex. 1), he entered into valid and enforceable provisions providing, *inter alia*, that he cannot (1) for one year following termination of his employment, solicit or accept business from any Clean Harbors customer with whom he had contact during his employment with Clean Harbors; (2) disclose or use any Confidential Information of Clean Harbors gained while employed by Clean Harbors; (3) for one year following termination of his employment, solicit or recruit any employee of Clean Harbors; and (4) for one year following termination of his employment, work for a business in competition with Clean Harbors.

61.     Christy received adequate and sufficient consideration for entering into the Noncompete Agreement, including among other things, employment and/or continued employment with Clean Harbors, access to the Company's Confidential Information, and training on the Company's business methods, strategies, know how, intellectual property, and other means of success.

62.     The restrictive covenants in the Noncompete Agreement are reasonable in scope

and duration, and necessary to protect Clean Harbors' legitimate business interests.

63.     Clean Harbors has fulfilled all of its obligations under the Noncompete Agreement.

64.     On information and belief, Christy breached the confidentiality provisions of the Noncompete Agreement by downloading, using and disclosing Clean Harbors' Confidential Information to GrayMar, which GrayMar would not know but for its association with Christy.

65.     Christy also breached the Noncompete Agreement by soliciting Clean Harbors' employees and customers within one year of the termination of his employment with Clean Harbors.

66.     Further, Christy breached the Noncompete Agreement by working for a business in competition with Clean Harbors within one year of the termination of his employment with Clean Harbors.

67.     Christy's breaches and continuing breach of his obligations have caused and will continue to cause Clean Harbors damages and irreparable harm in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Tortious interference with the Noncompete Agreement between Christy and Clean Harbors
(Against GrayMar)

68.     Clean Harbors hereby incorporates by reference the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

69.     Christy has existing contractual obligations to Clean Harbors through the Noncompete Agreement, whereby Christy is required to refrain from competing with Clean Harbors, and to refrain from soliciting Clean Harbors' customers and employees for one year following to termination of Christy's employment from Clean Harbors. These contractual

14

relationships constitute a property interest entitled to protection from unjustified interference by Clean Harbors' competitors or any other persons or entities, including GrayMar.

70.     GrayMar had knowledge of the contractual relationship between Clean Harbors and Christy.

71.     GrayMar intentionally and without justification has interfered, and continues to interfere, with Christy's contractual obligations to Clean Harbors by inducing and facilitating his breaches as described above.

72.     GrayMar's actions are without justification or privilege.

73.     As a direct and proximate result of these actions, Clean Harbors has suffered and continues to suffer harm and is entitled to recover damages against GrayMar in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**Misappropriation of Trade Secrets**
**Utah Uniform Trade Secrets Act, Utah Code § 13-24-1, *et seq*.**
(Against All Defendants)

74.     Clean Harbors incorporates by reference the allegations contained in Paragraphs 1 through 73 as if fully set forth herein.

75.     Clean Harbors' Confidential Information, including its customer and sales lists, constitute trade secrets within the meaning of the Utah Uniform Trade Secrets Act, Utah Code Ann. § 13-24-2(4) (1999).

76.     Clean Harbors derives independent economic value from its Confidential Information not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from their disclosure or use.

77.     Clean Harbors has undertaken, and continues to undertake, reasonable efforts to

safeguard its Confidential Information.

78. Christy and Wilcox had access to Clean Harbors' Confidential Information described above.

79. Upon information and belief, Christy and Wilcox downloaded, transmitted, and/or copied Clean Harbors' Confidential Information prior to their resignation and departure from Clean Harbors.

80. As trusted employees of Clean Harbors, Christy and Wilcox obtained Clean Harbors' Confidential Information under an obligation not to use or disclose it except for purposes of advancing Clean Harbors' interests. Christy and Wilcox had a duty as employees of Clean Harbors to protect and limit their use of Clean Harbors' Confidential Information.

81. Specifically, Christy has acknowledged that he is bound to protect the confidentiality of Clean Harbors' Confidential Information and other proprietary information through the Noncompete Agreement.

82. Upon information and belief, GrayMar has obtained or acquired access to Clean Harbors' Confidential Information through Christy and Wilcox.

83. GrayMar has no right whatsoever to Clean Harbors' Confidential Information, which Clean Harbors never consented—and would never consent—to disclose to GrayMar.

84. Christy and Wilcox have used and disclosed and, if not enjoined, will inevitably continue to use and disclose, Clean Harbors' Confidential Information in violation of their duties to Clean Harbors, and without Clean Harbors' consent, and to the irreparable detriment of Clean Harbors.

85. GrayMar has used or inevitably will use or disclose Clean Harbors' Confidential

Information without Clean Harbors' consent, and to the irreparable detriment of Clean Harbors.

86.     In particular, Defendants have misappropriated, used, and/or disclosed Clean Harbors' customer lists for the years 2018-2021, as well as its customer sales list for 2021 for their own benefit.

87.     The actions of Defendants set forth above constitute a misappropriation within the meaning of the Utah Uniform Trade Secrets Act, Utah Code Ann. § 13-24-1, *et seq*.

88.     The actions of Defendants set forth above have caused and will continue to cause damage to Clean Harbors in an amount to be determined at trial.

89.     The actions of Defendants set forth above were willful and malicious. Accordingly, Clean Harbors is entitled to an award of exemplary damages under Utah Code Ann. § 13-24-4(2).

90.     Because the actions of Defendants were willful and malicious, Clean Harbors is also entitled to its attorneys' fees under Utah Code Ann. § 13-24-5.

**FOURTH CAUSE OF ACTION**
**Misappropriation of Trade Secrets**
**Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. ("DTSA")**
(Against All Defendants)

91.     Clean Harbors incorporates by reference the allegations contained in Paragraphs 1 through 90 as if fully set forth herein.

92.     Clean Harbors' Confidential Information, including its customer and sales lists, constitute trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3) ("DTSA").

93.     This information constitutes trade secrets under the DTSA because Clean Harbors derives independent economic value from this information not being generally known to the public and not being readily ascertainable by proper means by other persons who could obtain

economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

94. Clean Harbors' Confidential Information is related to its products and services used in, or intended to be used in, interstate commerce.

95. Clean Harbors has invested substantial time and money in developing and maintaining its Confidential Information.

96. Clean Harbors takes reasonable steps to protect and keep secret its trade secrets.

97. Christy and Wilcox are obligated by applicable law, Clean Harbors' policies, and their own understanding of the confidential nature of Clean Harbors' Confidential Information, to maintain the secrecy of that information, including avoiding the use and/or disclosure of Clean Harbors' Confidential Information.

98. GrayMar is obligated by applicable law to maintain the secrecy of that information, including avoiding the use and/or disclosure of Clean Harbors' Confidential Information.

99. Nonetheless, Defendants actually misappropriated and/or threatened to inevitably misappropriate Clean Harbors' Confidential Information without Clean Harbors' consent, in violation of the DTSA.

100. Defendants' actual and/or threatened misappropriation has been willful and malicious, entitling Clean Harbors to an award of exemplary damages and attorneys' fees.

101. As a consequence of the foregoing, Clean Harbors has been injured and faces irreparable injury. For example, Clean Harbors has lost customers and continues to be threatened with losing customers, its Confidential Information, and damage to its goodwill and business reputation in an amount that may be impossible to ascertain, unless Defendants are enjoined and

restrained by order of this Court.

102.     Defendants will be and are being unjustly enriched by the misappropriation of Clean Harbors' Confidential Information, entitling Clean Harbors to an award of disgorgement of any unjust enrichment and ill-gotten gains obtained by Defendants as a result of their misconduct. Unless the Court restrains Defendants, they will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate Clean Harbors' trade secrets.

103.     Clean Harbors lacks an adequate remedy at law for Defendants' breaches and risks losing millions of dollars in business through Defendants' misconduct.

104.     As such, Clean Harbors requests an injunction stopping Defendants' misconduct and seeks monetary damages, attorneys' fees, and all other penalties available under the DTSA for Defendants' misappropriation of its Confidential Information in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Tortious Interference with Prospective Business Advantage**
(Against All Defendants)

105.     Clean Harbors incorporates by reference the allegations contained in Paragraphs 1 through 104 as if fully set forth herein.

106.     Through the tortious conduct described above, Defendants have and are continuing to tortiously interfere with Clean Harbors' continued business relationships with current customers, as well as with Clean Harbors' relationships with potential customers, to usurp their business for themselves. Prior to Defendants' conduct described above, there was a reasonable probability that these customers would have entered into business relationships with Clean Harbors

or otherwise continued their existing relationships.

107. At all relevant times, Defendants had knowledge of Clean Harbors' reasonable expectancy of continued business with its customers, particularly in light of Christy and Wilcox's close dealings with its customers while with Clean Harbors. Specifically, both Christy and Wilcox had direct sales and operational knowledge of Clean Harbors' customer base in the Utah market, including revenue, pricing, profit margins, and pipeline opportunities.

108. Defendants have purposefully and intentionally interfered with Clean Harbors' reasonable expectations set forth above, and such interference has prevented Clean Harbors' reasonable expectancy from continuing with respect to its customers, and, as a result, Clean Harbors has suffered and continues to suffer harm and is entitled to recover damages against Defendants in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**
(Against All Defendants)

109. Clean Harbors incorporates by reference the allegations contained in Paragraphs 1 through 108 as if fully set forth herein.

110. Defendants have received economic and other benefits from their acquisition, retention, use, and disclosure of Confidential Information belonging to Clean Harbors, in that (among other things):

    a)    Christy and Wilcox's value to their current employer, GrayMar, has been enhanced because of their acquisition, retention, use, and disclosure of Clean Harbors' Confidential Information;

    b)    Christy and Wilcox have acquired Clean Harbors' Confidential Information,

having substantial value, without paying for it; and

    c)    GrayMar has accepted and subsequently acquired Clean Harbors' Confidential Information, having substantial value, without paying for it.

111.    Defendants have accepted and appreciated the benefits they have received.

112.    Defendants have received and accepted the benefits of Clean Harbors' Confidential Information such that it would be inequitable and unjust for them to do so.

113.    Defendants have been unjustly enriched from the benefits they have received.

114.    Clean Harbors is entitled to damages, including but not limited to, the value of the benefits Defendants have received, in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**Conversion**
(Against All Defendants)

115.    Clean Harbors incorporates by reference the allegations contained in Paragraphs 1 through 114 as if fully set forth herein.

116.    Defendants exercised, and continue to exercise, unauthorized ownership, dominion, and/or control over Confidential Information belonging to or over which Clean Harbors is entitled to possession.

117.    Defendants unlawfully appropriated Confidential Information belonging to Clean Harbors to which they are not entitled.

118.    Defendants have failed to return the improperly converted Confidential Information.

119.    As a result of Defendants' unlawful conduct, Clean Harbors has been damaged in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**Civil Conspiracy**
(Against All Defendants)

120.     Clean Harbors incorporates by reference the allegations contained in Paragraphs 1 through 119 as if fully set forth herein.

121.     Clean Harbors is informed and believes Defendants reached an agreement to accomplish an unlawful purpose and/or lawful purpose by unlawful means.

122.     Clean Harbors is informed and believes Defendants conspired by concerted action to interfere with Clean Harbors' relationships with its employees and customers, contractual or otherwise, and to convert and be unjustly enriched by the use of Clean Harbors' Confidential Information and Company property in order to give GrayMar an unfair business advantage over Clean Harbors.

123.     Clean Harbors is informed and believes Defendants had a meeting of the minds on this objective or course of action, and committed one or more overt acts to further the objective or course of action.

124.     Defendants' actions are without privilege or justification.

125.     As a direct and proximate result of these actions, Clean Harbors has suffered and continues to suffer harm and is entitled to recover damages against Defendants in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**Breach of the Duty of Loyalty**
(Against Christy and Wilcox)

126.     Clean Harbors incorporates by reference the allegations contained in Paragraphs 1 through 125 as if fully set forth herein.

127. As Field Service Specialist and Branch Manager, respectively, Christy and Wilcox owed Clean Harbors a duty of loyalty, which duty was increased with their special positions of trust and confidence.

128. Christy and Wilcox each breached their duty of loyalty by willfully and deliberately divulging trade secrets and proprietary Clean Harbors' information to GrayMar, a direct competitor of Clean Harbors, while holding positions of trust and confidence for Clean Harbors.

129. Wilcox held himself out to the public as a GrayMar employee prior to his separation from Clean Harbors.

130. As a result of Christy's and Wilcox's breach of their duty of loyalty, Clean Harbors has lost at least seven customers.

131. Such actions caused monetary loss to Clean Harbors, loss of business and future business, and loss of goodwill in an amount to be determined at trial of this matter, reasonably expected to exceed $4 million.

132. During the time in which Christy and Wilcox were actively engaged in breaching their duty of loyalty as set forth above, they were each receiving a salary, bonuses, and benefits from Clean Harbors.

133. Because of Christy's and Wilcox's willful and deliberate breach of their duty of loyalty, Clean Harbors is entitled to recover the compensation (salary, bonuses, and benefits) it paid each to Christy and Wilcox during the periods in which they were disloyal to Clean Harbors, at least from January 15, 2022 through February 4, 2022. Christy's and Wilcox's salary, bonuses and benefits were in excess of $111,280.84 and $125,418.86, respectively. Therefore, Clean Harbors is entitled to reimbursement of at least $12,969.85.

134.     As a direct and proximate result of these actions, Clean Harbors has suffered and continues to suffer harm and is entitled to recover damages against Defendants Christy and Wilcox.

<u>**PRAYER FOR RELIEF**</u>

Clean Harbors respectfully requests the following relief:

a.      Judgment on the causes of action as requested;

b.      A permanent injunction compelling Defendants, their agents, and all persons in active concert or participation with Defendants to:

      i.   Comply with Christy's contractual obligations to Clean Harbors as identified in the Noncompete Agreement;

      ii.  Identify to Clean Harbors any and all customers or potential customers whom Christy, or anyone acting on his behalf, has solicited or otherwise contacted since his resignation from Clean Harbors, including the name of the customer, the date of the contact, and the method of communication;

      iii. Refrain from any use or disclosure of Clean Harbors' Confidential Information;

      iv.  Refrain from any spoliation of evidence; and

      v.   Extend the term of Christy's obligations under the Noncompete Agreement until at least the conclusion of this lawsuit and potentially longer as equity requires.

c.      An award of pre-and post-judgment interest, costs, and attorneys' fees as allowed by law;

d.      Restitution against Defendants and in favor of Clean Harbors, including

disgorgement of Defendants' wrongfully obtained profits, and any other appropriate relief;

e. Lost profits;

f. Punitive and enhanced damages as allowed by law;

g. A royalty on all revenue generated by Defendants through the acquisition, retention, use, and disclosure of Clean Harbors' Confidential Information or other business information;

h. Exemplary damages in an amount to be proven at trial; and

i. Such further relief as the Court deems just and proper.

## JURY DEMAND

Clean Harbors hereby demands a jury trial on all issues properly triable by jury.

Respectfully submitted this 2nd day of November, 2022.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Steven R. Reid*
Steven R. Reid, USB #16220
2000 South Colorado Boulevard
Tower Three, Suite 900
Denver, CO 80222
Telephone: 303.764.6800
Facsimile: 303.831.9246
steve.reid@ogletree.com

*Attorneys for Plaintiff Clean Harbors*
*Environmental, Services, Inc.*